## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

**LUIS HERNANDEZ-FERRER and**
**KEVIN DEZELSKE,**

      **Plaintiffs,**                        **CASE NO.: 6:20-CV-01688**

  v.

**UNIVERSAL PROTECTION SERVICE,**
**LLC, a Foreign Limited Liability Company,**

      **Defendant.**
_____

### JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT
### AND DISMISSAL WITH PREJUDICE

Plaintiffs Luis Hernandez-Ferrer and Kevin Dezelske (together, "Plaintiffs"), and Defendant Universal Protection Service, LLC ("Defendant"), by and through their undersigned counsel, hereby jointly request that this Court approve their settlement and dismiss this matter with prejudice and state as follows:

### PROCEDURAL AND FACTUAL BACKGROUND

On September 15, 2020, Plaintiffs initiated this action alleging overtime violations under the FLSA. On November 25, 2020, the parties filed a joint stipulation to submit this matter to binding arbitration. On December 1, 2020, the Court stayed this matter pending arbitration. Defendant denies that it violated the FLSA in any manner; however, the parties have been able to reach a settlement

following arms' length negotiations and have incorporated said settlement into a separate settlement agreement for each Plaintiff that has been executed by the relevant parties. The settlement agreements are attached hereto as Exhibit 1 and 2.

Prior to reaching the settlement of Plaintiffs' claims, the parties voluntarily exchanged information and documentation. Additionally, Plaintiffs' counsel prepared damages calculations for Defendant's review. In the course of gathering and exchanging documentation the Parties developed a deeper understanding of each sides' strengths and weaknesses. The Parties also exchanged additional information informally by multiple exchanges of dialogue between counsel. Over the past several weeks, the Parties endeavored to explore whether an amicable resolution in this matter could be reached. The Parties engaged in arms-length negotiations to resolve this lawsuit involving multiple exchanges of demands and responses. The Parties negotiated the amount that Defendant will pay in attorneys' fees separately and without regard to the amount paid to settle Plaintiffs' individual FLSA claims.

The Parties' Settlement Agreement reflects a fair and reasonable resolution of a bona fide dispute over Plaintiff's claims. The Parties thus respectfully request that the Court approve the Settlement Agreement and order the Parties to implement the Settlement Agreement according to its terms and conditions.

## <u>MEMORANDUM OF LAW</u>

Pursuant to <u>Lynn's Food Stores, Inc. v. U.S</u>, 679 F.2d 1350 (11th Cir. 1982), claims arising under the FLSA may be settled only with the approval of the Court or Secretary of Labor. To approve an FLSA settlement, a court must decide that the compromise is a fair and reasonable resolution of a bona fide dispute under the FLSA. *See Lynn's Food Stores, Inc.,* 679 F.2d at 1354. If the settlement is fair and reasonable, the court should approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

When an agreement includes an amount for attorneys' fees and costs, the court also must review "the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Id.* at *4 (quoting *Silva v. Miller,* 307 F. App'x 349, 351 (11th Cir. 2009) (internal quotation marks omitted). The parties may demonstrate the reasonableness of the fees by "representing that the parties agreed to plaintiff's attorney fees separately and without regard to the amount paid to settle the plaintiff's FLSA claim." *Parsel,* 2019 U.S. Dist. LEXIS 93848, at *4. In light of the Parties' representation to that effect and given that Defendant agrees this amount is reasonable under the circumstances, this Court may rule that the Parties have agreed to a reasonable amount of fees. *Id.* at *7.

Plaintiffs were at all times represented by competent counsel and negotiated settlement terms that are satisfactory to the Parties. The undersigned counsel, who are experienced in wage and hour matters, view this settlement as a good outcome for the Parties. The Parties stipulate that the negotiated settlement reached between the Parties represents a "fair" resolution of Plaintiffs' FLSA claims as well as Plaintiffs' reasonable attorneys' fees and costs, given the relative uncertainties involved.  After assessing their respective positions and consulting with their counsel, the Parties decided that it is in their respective best interests to resolve this matter early through settlement rather than to proceed through potentially extended and certainly costly arbitration. There has been no collusion in the settlement of this case. The Parties also stipulate that the settlement reached between them advances judicial economy.

The Parties further stipulate to the dismissal, with prejudice, of all claims asserted in this action, upon approval by the Court as requested above with each party to bear its own attorney's fees and costs. The Parties further request this Court retain jurisdiction to enforce that the Settlement Agreement entered into by and between the Parties.

For the convenience of the Court, a proposed Order is being submitted contemporaneously with this Joint Motion.

DATE:  June 1, 2021          By:  */s/ Jolie N. Pavlos*
                                   JOLIE N. PAVLOS, ESQ.
                                   Florida Bar No. 0125571
                                   MORGAN & MORGAN, P.A.
                                   20 N. Orange Avenue, Suite 1600
                                   Orlando, FL 32801
                                   *Attorney for Plaintiffs*

DATE:  June 1, 2021


                             By:  */s/ Mark L. Bonfanti*
                                   MARK L. BONFANTI, ESQ.
                                   Hall, Gilligan,
                                   Roberts & Shanlever LLP
                                   Florida Bar No. 0010185
                                   1241 Airport Road. Suite A
                                   Destin, Florida 32541

                                   *Attorneys for Defendant Universal
                                   Protection Service, LLC*

# EXHIBIT 1

## GENERAL RELEASE AND SETTLEMENT AGREEMENT

This General Release and Settlement Agreement ("Agreement") is made and entered into by and between Luis Hernandez-Ferrer ("Hernandez-Ferrer") and Universal Protection Service, LLC (d/b/a Allied Universal Security Services) and its affiliates, subsidiaries, and parents ("Allied Universal").

I

For and in consideration of the execution of this Agreement by Hernandez-Ferrer, Allied Universal agrees to provide Hernandez-Ferrer with certain valuable consideration, the sufficiency and receipt of which is hereby acknowledged, including providing Hernandez-Ferrer the gross sum of FOUR THOUSAND TWO HUNDRED SEVENTEEN DOLLARS AND 00/100 ($4,217.00), which amount will be payable as follows: (a) a check made payable to Hernandez-Ferrer in the gross amount of ONE THOUSAND SEVEN HUNDRED AND SEVENTEEN DOLLARS AND 00/100 ($1,717.00), minus any applicable federal, state and/or local tax withholdings, for any alleged lost wages by Hernandez-Ferrer, with Allied Universal issuing Hernandez-Ferrer a Form W-2 for such payment and (b) a check made payable to Morgan & Morgan in the amount of TWO THOUSAND FIVE HUNDRED DOLLARS AND 00/100 ($2,500.00) for attorney's fees, with Allied Universal issuing Morgan & Morgan a Form 1099 at year end for such payment. At the time of execution of this Agreement, Hernandez-Ferrer will complete and execute a Form W-4 (rev. Dec. 2020 version) and an authorized representative for Morgan & Morgan will complete a Form W-9 (revised Oct. 2018 version) to be returned with this Agreement. The above-noted benefits are provided in settlement of all of Hernandez-Ferrer's claims against Allied Universal and/or all of its affiliated companies, employees, attorneys, and representatives, including the claims set forth in the Complaint and Demand for Jury Trial filed in the District Court for the Middle District of Florida, Case No.: 6:20-CV-01688 (the "Lawsuit").

Delivery of the aforementioned settlement checks shall be made to Morgan & Morgan within fifteen (15) business days following receipt by defense counsel, Martenson, Hasbrouck & Simon LLP, of the original signed copy of this Agreement, a Form W-4 (rev. Dec. 2020 version) and Form W-9 (rev. Oct. 2018 version) executed by Hernandez-Ferrer, a Form W-9 (rev. Oct. 2018 version) executed by Morgan & Morgan, and a signed Request for Dismissal with Prejudice pursuant to Paragraph IV below. The documents referenced in the preceding sentence shall be sent via email to David Hamilton, Martenson, Hasbrouck & Simon LLP, 2573 Apple Valley Rd NE, Atlanta, Georgia 30319, dhamilton@martensonlaw.com.

II

For and in consideration of the agreements and commitments set forth above, the receipt and sufficiency of which are hereby acknowledged, Hernandez-Ferrer does hereby knowingly and voluntarily release and forever discharge, both jointly and severally, Allied Universal, its corporate parents and affiliates (including but not limited to AlliedBarton Security Services LLC; AlliedBarton Security Services LP; Universal Protection Service, LP; FJC Security Services, Inc., and/or U.S. Security Associates, Inc.), their current and former officers, directors, employees and clients, and their shareholders, attorneys, servants and agents, together with their successors and assigns (hereinafter collectively referred to as the "Releasees") from any and all

Luis Hernandez-Ferrer Initials: _____

DocuSign Envelope ID: 6B495F20-69A5-4953-833C-3C638A038A70

actions, causes of action, suits, debts, dues, sums of money, accounts, damages, judgments, claims and demands whatsoever, in law or in equity (hereinafter collectively referred to as "claims"), whether known or unknown, which Hernandez-Ferrer ever had, now has, or may or might in the future have against the Releasees, arising out of events or occurrences which arose at or before the moment Hernandez-Ferrer signs this Agreement, including, but not limited to: (i) those claims set forth in the Lawsuit and those claims arising out of or in any way connected with the circumstances alleged in or surrounding the Lawsuit; (ii) those claims arising out of any employment relationship between Hernandez-Ferrer and Allied Universal and/or any Releasee and/or the termination of that relationship; (iii) those claims arising under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et. seq.*, Florida's Genetic Testing law, Fla. Stat. Ann. § 760.40; Florida's AIDS Act, Fla. Stat. Ann. § 760.50 and/or Florida's Discrimination on the Basis of Sickle Cell Trait Law, Fla. Stat. Ann. § 448.075; (iv) those claims arising under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, *et seq.*; (v) those claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended, Florida's Civil Rights Act, as amended, Fla. Stat. Ann. §§ 760.01 et seq., Chapter 11A of the Miami-Dade County Code (civil and human rights ordinance), Broward County Human Rights Act (Ch. 16 1⁄2), Florida Fair Housing Act, Fla. Stat. §§ 760.20 to 760.37, Fla. Stat. § 768.095 (job references) and/or any other applicable state fair employment practices statute and/or any ordinance promulgated by any county, municipality, or other state subdivision; (vi) those claims arising under the Equal Pay Act of 1963, 29 U.S.C. §§ 206, *et seq.* and/or Florida's Equal Pay Laws, as amended, Fla. Stat. Ann. § 448.07, § 725.07; (vii) those claims arising under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.*, including, but not limited to, salary, severance pay and accrued time, and any other benefits; (viii) those claims arising under the National Labor Relations Act, 29 U.S.C. §§ 151, *et seq.* and/or Fla. Stat. Ann. §§ 447.01 *et seq.* (labor management relations laws); (ix) those claims arising under the Fair Labor Standards Act, Florida's Minimum Wage Act and wage hour laws, Fla. Stat. §§ 448.01 et. seq, 448.110 et. seq.; Florida's Wage Payment Laws, Fla. Stat. Ann. §§ 222.15, 532.01 et seq.; Article X, Section 24 of the Florida Constitution and/or any other applicable state and local wage and hour statutes; (x) those claims arising under the Worker Adjustment and Retraining Notification Act; (xi) those claims arising under the Family & Medical Leave Act, Florida Domestic Violence Leave law Fla. Stat. Ann. § 741.313 and/or any other local or state equivalent; (xii) those claims arising under any federal or state handicap or disability discrimination act, regulation or executive order; (xiii) those claims for retaliatory or wrongful conduct of any kind, including but not limited to those claims brought pursuant to the Florida Workers' Compensation anti-retaliation provision, Fla. Stat. § 440.205 and/or Fla. Stat. § 40.271 (anti-retaliation against jurors); (xiv) those claims for intentional or negligent infliction of emotional distress or outrageous conduct; (xv) those claims for breach of duty, misrepresentation, fraud, negligence, libel, slander, defamation or tortious conduct of any kind; (xvi) those claims for interference with business relationships, contractual relationships, or employment relationships of any kind; (xvii) those claims for breach of duty and/or the implied covenant of good faith and fair dealing; (xviii) those claims for interference with and/or breach of contract (express or implied, in fact or in law, oral or written); (xix) those claims arising under or in reliance upon any statute, regulation or ordinance (local, state, or federal); and (xx) any and all other claims which Hernandez-Ferrer ever had, now has, or may or might in the future have arising by reason of or in any way connected with any employment relationship which may have existed prior to or on the date hereof between

Luis Hernandez-Ferrer Initials: _____

Hernandez-Ferrer and Allied Universal and/or any Releasee and/or the termination of that relationship.
.

### III

Hernandez-Ferrer acknowledges and covenants that, in consideration for the agreements and commitments set forth in Paragraph I hereof, he has knowingly relinquished, waived and forever released any and all damages and remedies which might otherwise be available to him, including, without limitation, claims for contract or tort damages of any type, claims for legal or equitable relief under either federal or state statutory and common law, claims for backpay, reinstatement and recovery of attorneys' fees and/or costs, and the right to be a member in any class in any lawsuit or administrative action arising out of Hernandez-Ferrer's employment with Allied Universal. Hernandez-Ferrer further acknowledges that he has received all payments and benefits that he is entitled to receive by virtue of any employment with Releasees including, but not limited to, payment for any and all wages, salary, bonuses, overtime compensation, vacation, and/or personal days owed to him by Releasees up to the moment of his execution of this Agreement. In addition, Hernandez-Ferrer further acknowledges he has received all damages, liquidated damages, statutory damages, attorneys' fees, or other sums or payments that he is entitled to receive by virtue of any claim that he asserted in the Lawsuit or that he could have asserted in the Lawsuit. The parties further acknowledge and agree that, except as expressly set forth in Paragraph I above, each party to this Agreement will bear his and/or its own costs and attorney's fees. Hernandez-Ferrer further warrants that as of the time of execution of this Agreement, he has not assigned or transferred any claims of any nature that he would otherwise have against the Releasees. Hernandez-Ferrer acknowledges that nothing in this Agreement prevents him from filing a charge or complaint with the Equal Employment Opportunity Commission ("EEOC"), National Labor Relations Board ("NLRB"), Occupational Health and Safety Administration ("OSHA"), or another state or federal agency (hereinafter "Government Agency") or cooperating in any investigation or proceeding conducted by such a Government Agency. However, Hernandez-Ferrer understands and agrees that, if he files a charge or complaint with such a Government Agency, or if the Government Agency independently pursues any relief on behalf of Hernandez-Ferrer, Hernandez-Ferrer is, to the extent permissible by law, hereby waiving his right to recover monetary damages or injunctive relief specific to Hernandez-Ferrer. Notwithstanding any other provision contained herein, nothing in this Agreement shall limit Hernandez-Ferrer's ability to accept any reward or incentive pursuant to a government-administered whistleblower program. Moreover, nothing in this Agreement shall be construed as a waiver of any right which, by law, cannot be waived.

### IV

Hernandez-Ferrer further acknowledges and covenants not to sue the Releasees, or to participate or aid in any way in any suit or proceeding or to execute, seek to impose, collect or recover upon, or otherwise enforce or accept any judgment, decision, award, warrant or attachment upon any claim released by him herein. Hernandez-Ferrer also acknowledges and covenants that he understands that after signing this Agreement, he cannot proceed against any person or party mentioned in it with respect to or on account of any of the matters referred to in it. Hernandez-Ferrer further agrees that he will take whatever steps are necessary to ensure that the Lawsuit is dismissed with prejudice, including but not limited to executing a Stipulation and/or Request for Dismissal with Prejudice and returning it to Allied Universal's counsel for filing with the Court.

Luis Hernandez-Ferrer Initials: _____

## V

The amounts paid in connection with the provisions of Paragraph I, above, shall be reported to the Internal Revenue Service in accordance with applicable statutes and regulations. With respect to the amounts paid directly to Hernandez-Ferrer, the amounts subject to tax withholdings shall be reported on a Form W-2 issued to Hernandez-Ferrer at year-end. With respect to the amount paid to Morgan & Morgan, that payment shall be reported on a Form 1099-MISC issued to Morgan & Morgan at year end. Hernandez-Ferrer and Morgan & Morgan shall each be responsible for the payment of any local, state, and/or federal taxes which may be attributable to the payments described above and shall indemnify and hold Allied Universal harmless from such tax consequences, including interest and/or penalties, arising out of the payments described in Paragraph I above. The parties acknowledge that no representations have been or are made herein by or to any signatory to this Agreement regarding the tax consequences of this Agreement.

## VI

In further consideration of this Agreement and the commitments set forth in Paragraph I hereinabove, Hernandez-Ferrer represents, understands, and agrees that he will not be reemployed by Allied Universal and/or its parents, subsidiaries, divisions or affiliates and that he will not knowingly apply for or otherwise seek employment with Allied Universal and/or its parents, subsidiaries, divisions or affiliates at any time in the future. Hernandez-Ferrer further acknowledges and agrees that if he is inadvertently hired by Allied Universal and/or its parents, subsidiaries, divisions or affiliates in contradiction of this Paragraph, such entity shall be entitled to immediately terminate Hernandez-Ferrer's employment, upon becoming aware of Hernandez-Ferrer's inadvertent hiring, based solely on the provisions in this Paragraph, regardless of whether or not any other grounds for termination may exist.

## VII

Allied Universal agrees to provide a neutral reference in response to any employment inquiries regarding Hernandez-Ferrer, stating only dates of employment and position held, PROVIDED THAT all inquiries are directed to Allied Universal's employment verification vendor, VerifyFast, using company code 8927 via verifyfast.com or via telephone at (877) 400-4397.

## VIII

Hernandez-Ferrer and his counsel do further covenant that they shall make no disclosure of any kind concerning this Agreement and the sums paid as consideration hereof to any person, persons or organization other than a spouse, to a court in the event of an alleged breach, or as required by a court of law (*e.g.*, by virtue of a validly issued subpoena), or to their attorney, accountant or tax advisor, and then only to the extent necessary to prepare the federal, state or local tax returns or other documents required by law to be filed. While not limiting the generality of the foregoing, "disclosure" includes a statement, written or oral, to any person, newspaper, magazine, radio, television station or publishing company. Hernandez-Ferrer does further agree that if he is asked about his claims or about this Agreement, he will state only, in substance, that "The case is over."

Luis Hernandez-Ferrer Initials: _____

## IX

Hernandez-Ferrer agrees and covenants that he will not directly or indirectly, orally or in writing, disparage Allied Universal and/or any of its services, employees (current and former), officers, directors, members, representatives, agents and/or attorneys in any way or interfere in any way with their relationships with their customers, employees, family and/or friends. Hernandez-Ferrer further agrees not to solicit or encourage any individual to bring a claim against Releasees.

## X

Notwithstanding the provisions of Paragraphs III and VIII above, or any other language in this Agreement, nothing in this Agreement is intended to or shall prevent, impede or interfere with Hernandez-Ferrer's non-waivable right, without prior notice to Allied Universal, to provide information to the government, participate in investigations, file a complaint, testify in proceedings regarding Allied Universal's past or future conduct, or engage in any future activities protected under federal, state or local law, including whistleblower statutes, or to receive and fully retain a monetary award from a government-administered whistleblower award program for providing information directly to a Government Agency. Solely in connection with such reporting, or in connection with a charge, complaint or investigation as contemplated in Paragraph III, above, Hernandez-Ferrer may disclose confidential information, in confidence, to a Government Agency or to an attorney to address possible violations of law; however, any disclosure of confidential information must be in good faith and effectuated in a manner that prevents the dissemination of confidential information beyond those persons necessary to make the report or filing, such as filing the confidential information under seal and otherwise preventing it from being publicly disclosed. While Hernandez-Ferrer is encouraged to bring any such possible violation to the attention of Allied Universal, Hernandez-Ferrer does not need the prior authorization of Allied Universal to make any such reports or disclosures to these entities. To the extent Hernandez-Ferrer chooses to report a possible violation directly to Allied Universal, that report should be made to an appropriate member of management or the Human Resources Department. Allied Universal employees have the right to engage in legally protected activity.

## XII

Hernandez-Ferrer agrees and covenants that he has carefully reviewed, studied and thought over the terms of this Agreement, and that all questions concerning this Agreement have been answered to his satisfaction. Hernandez-Ferrer further represents and agrees that he was advised and encouraged, prior to his execution of this Agreement, to discuss and review all aspects of this Agreement with his private attorney and that he has, to the extent he wished to do so, availed himself of this opportunity.

## XIII

It is also understood and agreed that this Agreement is executed by Hernandez-Ferrer voluntarily and is not based upon any representations or statements of any kind made by Allied Universal or any of its representatives as to the merits, legal liabilities, or value of any current or potential claims which Hernandez-Ferrer may have. Hernandez-Ferrer also acknowledges that no promise or inducement for this Agreement has been offered or made, except as herein set forth, and this Agreement contains the full terms of the agreement between Hernandez-Ferrer and Releasees.

Luis Hernandez-Ferrer Initials: _____

DocuSign Envelope ID: 6B495F29-68AF-4953-932C-3C638A028A70

## XIV

It is further understood and agreed that this Agreement is entered into voluntarily by both parties, that this settlement is a compromise of disputed claims and that the payment conferred herein is not to be construed as an admission of liability on the part of the persons, corporations and entities hereby released, by whom liability is expressly denied.

## XV

This Agreement shall be binding upon Hernandez-Ferrer, his heirs, executors, administrators, assigns, successors, beneficiaries, employees and agents, and all other persons asserting claims by, on behalf of, or through Hernandez-Ferrer based or founded upon any of the claims released herein. Hernandez-Ferrer acknowledges that this Agreement is made and entered into in the State of Florida and shall, in all respects, be interpreted, enforced and governed under the laws of said State. All terms of this Agreement shall inure to the benefit of the Releasees and their predecessors, successors and assigns.

## XVI

Should any word, phrase, clause, sentence or paragraph of this Agreement be deemed unenforceable by a competent court of law, the enforceability of the remainder of the Agreement shall be unaffected.

## XVII

Hernandez-Ferrer acknowledges and agrees that, should he fail or refuse to execute this Agreement, all obligations of Allied Universal, including the obligation to pay the sums referenced in Paragraph I as set forth herein, shall be entirely null, void and of no effect.

## XVIII

This Agreement constitutes the entire agreement between Hernandez-Ferrer and the Releasees pertaining to the subjects contained herein and supersedes any and all prior and/or contemporaneous agreements, representations or understandings, written or oral. It is expressly understood and agreed that this Agreement may not be altered, amended, modified or otherwise changed in any respect or particular whatsoever except in writing duly executed by Hernandez-Ferrer and an authorized representative of Allied Universal. This Agreement is intended to resolve fully, completely, and forever all disputes based upon events, omissions or acts occurring on or prior to its execution, as well as all other issues or claims in any way arising out of, or connected with, the prior employment of Hernandez-Ferrer with Allied Universal and/or any Releasee and/or Hernandez-Ferrer's separation from that employment.

*[signatures on following page]*

Luis Hernandez-Ferrer Initials: _____

IN WITNESS WHEREOF, Luis Hernandez-Ferrer sets his hand and seal this <u>17</u> day of
<u>May</u> _____, 2021.

_Luis Hernandez-Ferrer_

_____
Luis Hernandez-Ferrer


_____
For and on behalf of Universal Protection Service, LLC

Luis Hernandez-Ferrer Initials: _____

# EXHIBIT 2

## GENERAL RELEASE AND SETTLEMENT AGREEMENT

      This General Release and Settlement Agreement ("Agreement") is made and entered into by and between Kevin Dezelske ("Dezelske") and Universal Protection Service, LLC (d/b/a Allied Universal Security Services) and its affiliates, subsidiaries, and parents ("Allied Universal").

I

      For and in consideration of the execution of this Agreement by Dezelske, Allied Universal agrees to provide Dezelske with certain valuable consideration, the sufficiency and receipt of which is hereby acknowledged, including providing Dezelske the gross sum of THREE THOUSAND ONE HUNDRED TWENTY-FIVE DOLLARS AND 00/100 ($3,125.00), which amount will be payable as follows: (a) a check made payable to Dezelske in the gross amount of SIX HUNDRED TWENTY-FIVE DOLLARS AND 00/100 ($625.00), minus any applicable federal, state and/or local tax withholdings, for any alleged lost wages by Dezelske, with Allied Universal issuing Dezelske a Form W-2 for such payment and (b) a check made payable to Morgan & Morgan in the amount of TWO THOUSAND FIVE HUNDRED DOLLARS AND 00/100 ($2,500.00) for attorney's fees, with Allied Universal issuing Morgan & Morgan a Form 1099 at year end for such payment. At the time of execution of this Agreement, Dezelske will complete and execute a Form W-4 (rev. Dec. 2020 version) and an authorized representative for Morgan & Morgan will complete a Form W-9 (revised Oct. 2018 version) to be returned with this Agreement.   The above-noted benefits are provided in settlement of all of Dezelske's claims against Allied Universal and/or all of its affiliated companies, employees, attorneys, and representatives, including the claims set forth in the Complaint and Demand for Jury Trial filed in the District Court for the Middle District of Florida, Case No.: 6:20-CV-01688 (the "Lawsuit") that involve, encompass, or directly relate to hours allegedly worked by Dezelske at either the Allied Universal client jobsite known as "KPMG – The Lakehouse" or the Allied Universal client jobsite known as "Amazon – DM03 – 1216 S. Orange Blossom Trail."

      Delivery of the aforementioned settlement checks shall be made to Morgan & Morgan within fifteen (15) business days following receipt by defense counsel, Martenson, Hasbrouck & Simon LLP, of the original signed copy of this Agreement, a Form W-4 (rev. Dec. 2020 version) and Form W-9 (rev. Oct. 2018 version) executed by Dezelske, a Form W-9 (rev. Oct. 2018 version) executed by Morgan & Morgan, and a signed Request for Dismissal with Prejudice pursuant to Paragraph IV below. The documents referenced in the preceding sentence shall be sent via email to David Hamilton, Martenson, Hasbrouck & Simon LLP, 2573 Apple Valley Rd NE, Atlanta, Georgia 30319, dhamilton@martensonlaw.com.

II

      For and in consideration of the agreements and commitments set forth above, the receipt and sufficiency of which are hereby acknowledged, Dezelske does hereby knowingly and voluntarily release and forever discharge, both jointly and severally, Allied Universal, its corporate parents and affiliates (including but not limited to AlliedBarton Security Services LLC; AlliedBarton Security Services LP; Universal Protection Service, LP; FJC Security Services, Inc., and/or U.S. Security Associates, Inc.), their current and former officers, directors, employees and clients, and their shareholders, attorneys, servants and agents, together with their

Kevin Dezelske Initials: _____

successors and assigns (hereinafter collectively referred to as the "Releasees") from any and all actions, causes of action, suits, debts, dues, sums of money, accounts, damages, judgments, claims and demands whatsoever, in law or in equity (hereinafter collectively referred to as "claims"), whether known or unknown, which Dezelske ever had, now has, or may or might in the future have against the Releasees, arising out of events or occurrences which arose at or before the moment Dezelske signs this Agreement, and which involve, arise out of, encompass, or relate to Dezelske's employment at either the Allied Universal client jobsite known as "KPMG – The Lakehouse" or the Allied Universal client jobsite known as "Amazon – DM03 – 1216 S. Orange Blossom Trail," including, but not limited to: (i) those claims set forth in the Lawsuit and those claims arising out of or in any way connected with the circumstances alleged in or surrounding the Lawsuit; (ii) those claims arising out of any employment relationship between Dezelske and Allied Universal and/or any Releasee and/or the termination of that relationship; (iii) those claims arising under the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et. seq.*, Florida's Genetic Testing law, Fla. Stat. Ann. § 760.40; Florida's AIDS Act, Fla. Stat. Ann. § 760.50 and/or Florida's Discrimination on the Basis of Sickle Cell Trait Law, Fla. Stat. Ann. § 448.075; (iv) those claims arising under the Rehabilitation Act of 1973, 29 U.S.C. §§ 701, *et seq.*; (v) those claims arising under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, as amended, Florida's Civil Rights Act, as amended, Fla. Stat. Ann. §§ 760.01 et seq., Chapter 11A of the Miami-Dade County Code (civil and human rights ordinance), Broward County Human Rights Act (Ch. 16 1⁄2), Florida Fair Housing Act, Fla. Stat. §§ 760.20 to 760.37, Fla. Stat. § 768.095 (job references) and/or any other applicable state fair employment practices statute and/or any ordinance promulgated by any county, municipality, or other state subdivision; (vi) those claims arising under the Equal Pay Act of 1963, 29 U.S.C. §§ 206, *et seq.* and/or Florida's Equal Pay Laws, as amended, Fla. Stat. Ann. § 448.07, § 725.07; (vii) those claims arising under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, *et seq.*, including, but not limited to, salary, severance pay and accrued time, and any other benefits; (viii) those claims arising under the National Labor Relations Act, 29 U.S.C. §§ 151, *et seq.* and/or Fla. Stat. Ann. §§ 447.01 *et seq.* (labor management relations laws); (ix) those claims arising under the Fair Labor Standards Act, Florida's Minimum Wage Act and wage hour laws, Fla. Stat. §§ 448.01 et. seq, 448.110 et. seq.; Florida's Wage Payment Laws, Fla. Stat. Ann. §§ 222.15, 532.01 et seq.; Article X, Section 24 of the Florida Constitution and/or any other applicable state and local wage and hour statutes; (x) those claims arising under the Worker Adjustment and Retraining Notification Act; (xi) those claims arising under the Family & Medical Leave Act, Florida Domestic Violence Leave law Fla. Stat. Ann. § 741.313 and/or any other local or state equivalent; (xii) those claims arising under any federal or state handicap or disability discrimination act, regulation or executive order; (xiii) those claims for retaliatory or wrongful conduct of any kind, including but not limited to those claims brought pursuant to the Florida Workers' Compensation anti-retaliation provision, Fla. Stat. § 440.205 and/or Fla. Stat. § 40.271 (anti-retaliation against jurors); (xiv) those claims for intentional or negligent infliction of emotional distress or outrageous conduct; (xv) those claims for breach of duty, misrepresentation, fraud, negligence, libel, slander, defamation or tortious conduct of any kind; (xvi) those claims for interference with business relationships, contractual relationships, or employment relationships of any kind; (xvii) those claims for breach of duty and/or the implied covenant of good faith and fair dealing; (xviii) those claims for interference with and/or breach of contract (express or implied, in fact or in law, oral or written); (xix) those claims arising under or in reliance upon any statute, regulation or ordinance (local, state, or federal); and (xx) any and

Kevin Dezelske Initials: _____

all other claims which Dezelske ever had, now has, or may or might in the future have arising by reason of or in any way connected with any employment relationship which may have existed prior to or on the date hereof between Dezelske and Allied Universal and/or any Releasee and/or the termination of that relationship and which involves, arises out of, encompasses, or relates to Dezelske's employment at either the Allied Universal client jobsite known as "KPMG – The Lakehouse" or the Allied Universal client jobsite known as "Amazon – DM03 – 1216 S. Orange Blossom Trail."

III

Dezelske further acknowledges and covenants that, in consideration for the agreements and commitments set forth in Paragraph I hereof, he has knowingly relinquished, waived and forever released any and all damages and remedies which might otherwise be available to him, including, without limitation, claims for contract or tort damages of any type, claims for legal or equitable relief under either federal or state statutory and common law, claims for backpay, reinstatement and recovery of attorneys' fees and/or costs, and the right to be a member in any class in any lawsuit or administrative action arising out of Dezelske's employment with Allied Universal at either the Allied Universal client jobsite known as "KPMG – The Lakehouse" or the Allied Universal client jobsite known as "Amazon – DM03 – 1216 S. Orange Blossom Trail." Dezelske further acknowledges that he has received all payments and benefits that he is entitled to receive by virtue of any employment with Releasees which involves, arises out of, encompasses, or relates to Dezelske's employment at either the Allied Universal client jobsite known as "KPMG – The Lakehouse" or the Allied Universal client jobsite known as "Amazon – DM03 – 1216 S. Orange Blossom Trail" including, but not limited to, payment for any and all wages, salary, bonuses, overtime compensation, vacation, and/or personal days owed to him by Releasees up to the moment of his execution of this Agreement. In addition, Dezelske further acknowledges he has received all damages, liquidated damages, statutory damages, attorneys' fees, or other sums or payments that he is entitled to receive by virtue of any claim that he asserted in the Lawsuit or that he could have asserted in the Lawsuit. The parties further acknowledge and agree that, except as expressly set forth in Paragraph I above, each party to this Agreement will bear his and/or its own costs and attorney's fees. Dezelske further warrants that as of the time of execution of this Agreement, he has not assigned or transferred any claims of any nature that he would otherwise have against the Releasees. Dezelske acknowledges that nothing in this Agreement prevents him from filing a charge or complaint with the Equal Employment Opportunity Commission ("EEOC"), National Labor Relations Board ("NLRB"), Occupational Health and Safety Administration ("OSHA"), or another state or federal agency (hereinafter "Government Agency") or cooperating in any investigation or proceeding conducted by such a Government Agency. However, Dezelske understands and agrees that, if he files a charge or complaint with such a Government Agency, or if the Government Agency independently pursues any relief on behalf of Dezelske, Dezelske is, to the extent permissible by law, hereby waiving his right to recover monetary damages or injunctive relief specific to Dezelske. Notwithstanding any other provision contained herein, nothing in this Agreement shall limit Dezelske's ability to accept any reward or incentive pursuant to a government-administered whistleblower program. Moreover, nothing in this Agreement shall be construed as a waiver of any right which, by law, cannot be waived.

Kevin Dezelske Initials: _____

IV

Dezelske further acknowledges and covenants not to sue the Releasees, or to participate or aid in any way in any suit or proceeding or to execute, seek to impose, collect or recover upon, or otherwise enforce or accept any judgment, decision, award, warrant or attachment upon any claim released by him herein. Dezelske also acknowledges and covenants that he understands that after signing this Agreement, he cannot proceed against any person or party mentioned in it with respect to or on account of any of the matters referred to in it. Dezelske further agrees that he will take whatever steps are necessary to ensure that the Lawsuit is dismissed with prejudice, including but not limited to executing a Stipulation and/or Request for Dismissal with Prejudice and returning it to Allied Universal's counsel for filing with the Court.

V

The amounts paid in connection with the provisions of Paragraph I, above, shall be reported to the Internal Revenue Service in accordance with applicable statutes and regulations. With respect to the amounts paid directly to Dezelske, the amounts subject to tax withholdings shall be reported on a Form W-2 issued to Dezelske at year-end. With respect to the amount paid to Morgan & Morgan, that payment shall be reported on a Form 1099-MISC issued to Morgan & Morgan at year end. Dezelske and Morgan & Morgan shall each be responsible for the payment of any local, state, and/or federal taxes which may be attributable to the payments described above and Dezelske shall indemnify and hold Allied Universal harmless from such tax consequences, including interest and/or penalties, arising out of the payments described in Paragraph I above. The parties acknowledge that no representations have been or are made herein by or to any signatory to this Agreement regarding the tax consequences of this Agreement.

VI

In further consideration of this Agreement and the commitments set forth in Paragraph I hereinabove, Dezelske represents, understands, and agrees that he will not be reemployed by Allied Universal and/or its parents, subsidiaries, divisions or affiliates and that he will not knowingly apply for or otherwise seek employment with Allied Universal and/or its parents, subsidiaries, divisions or affiliates at any time in the future. Dezelske further acknowledges and agrees that if he is inadvertently hired by Allied Universal and/or its parents, subsidiaries, divisions or affiliates in contradiction of this Paragraph, such entity shall be entitled to immediately terminate Dezelske's employment, upon becoming aware of Dezelske's inadvertent hiring, based solely on the provisions in this Paragraph, regardless of whether or not any other grounds for termination may exist.

VII

Allied Universal agrees to provide a neutral reference in response to any employment inquiries regarding Dezelske, stating only dates of employment and position held, PROVIDED THAT all inquiries are directed to Allied Universal's employment verification vendor, VerifyFast, using company code 8927 via verifyfast.com or via telephone at (877) 400-4397.

VIII

Dezelske and his counsel do further covenant that they shall make no disclosure of any kind concerning this Agreement and the sums paid as consideration hereof to any person, persons or

Kevin Dezelske Initials: _____

organization other than a spouse, to a court in the event of an alleged breach, or as required by a court of law (*e.g.*, by virtue of a validly issued subpoena), or to their attorney, accountant or tax advisor, and then only to the extent necessary to prepare the federal, state or local tax returns or other documents required by law to be filed. While not limiting the generality of the foregoing, "disclosure" includes a statement, written or oral, to any person, newspaper, magazine, radio, television station or publishing company. Dezelske does further agree that if he is asked about his claims or about this Agreement, he will state only, in substance, that "The case is over."

IX

Dezelske agrees and covenants that he will not directly or indirectly, orally or in writing, disparage Allied Universal and/or any of its services, employees (current and former), officers, directors, members, representatives, agents and/or attorneys in any way or interfere in any way with their relationships with their customers, employees, family and/or friends. Dezelske further agrees not to solicit or encourage any individual to bring a claim against Releasees.

X

Notwithstanding the provisions of Paragraphs III and VIII above, or any other language in this Agreement, nothing in this Agreement is intended to or shall prevent, impede or interfere with Dezelske's non-waivable right, without prior notice to Allied Universal, to provide information to the government, participate in investigations, file a complaint, testify in proceedings regarding Allied Universal's past or future conduct, or engage in any future activities protected under federal, state or local law, including whistleblower statutes, or to receive and fully retain a monetary award from a government-administered whistleblower award program for providing information directly to a Government Agency. Solely in connection with such reporting, or in connection with a charge, complaint or investigation as contemplated in Paragraph III, above, Dezelske may disclose confidential information, in confidence, to a Government Agency or to an attorney to address possible violations of law; however, any disclosure of confidential information must be in good faith and effectuated in a manner that prevents the dissemination of confidential information beyond those persons necessary to make the report or filing, such as filing the confidential information under seal and otherwise preventing it from being publicly disclosed. While Dezelske is encouraged to bring any such possible violation to the attention of Allied Universal, Dezelske does not need the prior authorization of Allied Universal to make any such reports or disclosures to these entities. To the extent Dezelske chooses to report a possible violation directly to Allied Universal, that report should be made to an appropriate member of management or the Human Resources Department. Allied Universal employees have the right to engage in legally protected activity.

XII

Dezelske agrees and covenants that he has carefully reviewed, studied and thought over the terms of this Agreement, and that all questions concerning this Agreement have been answered to his satisfaction. Dezelske further represents and agrees that he was advised and encouraged, prior to his execution of this Agreement, to discuss and review all aspects of this Agreement with his private attorney and that he has, to the extent he wished to do so, availed himself of this opportunity.

XIII

It is also understood and agreed that this Agreement is executed by Dezelske voluntarily and is not based upon any representations or statements of any kind made by Allied Universal or any of

Kevin Dezelske Initials: _____

its representatives as to the merits, legal liabilities, or value of any current or potential claims which Dezelske may have. Dezelske also acknowledges that no promise or inducement for this Agreement has been offered or made, except as herein set forth, and this Agreement contains the full terms of the agreement between Dezelske and Releasees.

## XIV

It is further understood and agreed that this Agreement is entered into voluntarily by both parties, that this settlement is a compromise of disputed claims and that the payment conferred herein is not to be construed as an admission of liability on the part of the persons, corporations and entities hereby released, by whom liability is expressly denied.

## XV

This Agreement shall be binding upon Dezelske, his heirs, executors, administrators, assigns, successors, beneficiaries, employees and agents, and all other persons asserting claims by, on behalf of, or through Dezelske based or founded upon any of the claims released herein. Dezelske acknowledges that this Agreement is made and entered into in the State of Florida and shall, in all respects, be interpreted, enforced and governed under the laws of said State. All terms of this Agreement shall inure to the benefit of the Releasees and their predecessors, successors and assigns.

## XVI

Should any word, phrase, clause, sentence or paragraph of this Agreement be deemed unenforceable by a competent court of law, the enforceability of the remainder of the Agreement shall be unaffected.

## XVII

Dezelske acknowledges and agrees that, should he fail or refuse to execute this Agreement, all obligations of Allied Universal, including the obligation to pay the sums referenced in Paragraph I as set forth herein, shall be entirely null, void and of no effect.

## XVIII

This Agreement constitutes the entire agreement between Dezelske and the Releasees pertaining to the subjects contained herein and supersedes any and all prior and/or contemporaneous agreements, representations or understandings, written or oral. It is expressly understood and agreed that this Agreement may not be altered, amended, modified or otherwise changed in any respect or particular whatsoever except in writing duly executed by Dezelske and an authorized representative of Allied Universal. This Agreement is intended to resolve fully, completely, and forever all disputes based upon events, omissions or acts occurring on or prior to its execution, as well as all other issues or claims in any way arising out of, or connected with, the prior employment of Dezelske with Allied Universal and/or any Releasee and/or Dezelske's separation from that employment.

*[signatures on following page]*

Kevin Dezelske Initials: _____

IN WITNESS WHEREOF, Kevin Dezelske sets his hand and seal this ⎯17⎯ day of May ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯, 2021.

_Kevin Dezelske_
_____
Kevin Dezelske

_____
For and on behalf of Universal Protection Service, LLC

Kevin Dezelske Initials: _____